We will hear argument first this morning in Case 12-609, Kansas v. Cheever. General Schmitt. Mr. Chief Justice, and may it please the Court. Once the Respondent made the trial decision to make his mental status an issue and then supported his argument by introducing as evidence the testimony of a mental health expert who had examined the defendant, he no longer could properly claim the protection of the Fifth Amendment to avoid like-kind rebuttal by another court-appointed expert. When the Kansas Supreme Court allowed the Respondent to do just that, it committed constitutional error and should be reversed for three reasons. First, this Court's cases point to the opposite conclusion. Second, allowing this mental-for-mental expert rebuttal is consistent with this Court's precedent, with the purposes of the Fifth Amendment, and it is fair. And third, a holding that is consistent with the Kansas Supreme Court's rule would have the effect of undermining the truth-seeking function of the trial by excluding relevant evidence from the jury, especially in the mental health context where the jury has to make an assessment based on that. Of course, that would be true. The last would be true even if the defendant had not sought to introduce expert evidence of his own, right? That would be true, Your Honor. We're not asking for a rule that is that broad. We're asking for a rule of parity that allows that once the defendant has opened the door by putting his own expert on, the government may respond in that way. Well, but I have the concern of Justice Scalia. I mean, that makes your case easier. But it seems to me that if the defendant puts his mental capacity in issue and then testifies himself, but with no expert, the State can still call its own expert. So far as the Federal Constitution is concerned, there might be some Kansas rules about it. Your Honor, that may well be true, and the language of this Court's precedent through Smith and Buchanan, for example, suggests that the rule may be broader than the minimum that we're asking for. But of course, the issue is not whether the State can call its own expert. The issue is whether the State can compel him to speak to its expert. Yes, Your Honor. Without which the expert can't testify, right? Yes, Your Honor. The Fifth Amendment, of course, is implicated when we're talking about a mental health expert who has conducted an examination of the defendant and the Respondent. That's what we believe is appropriate here in terms of the parity rule. Once the defendant puts on his expert who has done so, the government may respond in kind. General, General, if you could just comment. Well, if I could just make the question, it seems to me that it's not necessary to make our decision depend on whether or not another expert has been called. That makes your case easier, and sometimes when we write opinions, we take the easiest route. But I take it, under your theory, even if the defendant had not called his own expert, we would still have the same issue before the Court, and you would take the position that a prosecution expert can testify. Now, whether or not he can use the previous statements, that's the second point. And, Your Honor, the hypothetical Your Honor posits is closely related to the second question Kansas presented, which was not granted in this case, which would be the impeachment use once the defendant himself has testified. But the defendant would have to introduce the issue of his mental state, either by his own testimony or an expert. But there's an oddity about this case. Do I understand correctly, General Smith, that if there had never been a Federal proceeding, if this case had proceeded from start to finish in the Kansas courts, there would have been no Wilner evidence, there would have been no prosecution expert, because it wouldn't have been allowed under Kansas's own rules? Your Honor, Kansas law makes the distinction between voluntary intoxication as a defense and mental disease or defect as a defense. And it does provide a mechanism under the mental disease pleadings for the obtaining of a court-ordered mental evaluation, not under the other. But this case was voluntary intoxication, and under Kansas's procedure, the prosecution could not have called a witness absent insanity or a mental disease. Is that right? Justice Ginsburg, it is correct that Kansas could not have called a witness under a voluntary intoxication defense, could not have obtained a court-ordered mental evaluation. That is correct. The reason I didn't merely say yes is we do have some disagreement with the other side that would be dealt with in the courts below as to whether this truly was a voluntary intoxication defense, since the other side's expert did put the long-term effects on the defendant's mental capacity and the issue based on his methamphetamine use. General Schmidt, am I wrong to think that the issue in this case is whether there was compulsion at the time when the statement was made to the court-ordered expert? That's the issue. It's not — it wouldn't be a question of whether there was a violation of the Fifth Amendment when the statements were later introduced in the Kansas trial. Isn't it very well settled in this Court's precedents that the introduction of statements obtained — that the introduction of statements at a trial is not — does not implicate the Fifth Amendment privilege? Well, Your Honor, the compulsion question is a threshold question. And to the extent this Court has recognized, for example, in cases like Ventra's, that there are truly compelled statements in a Portash or Mincy sort of circumstance, that threshold issue would resolve it. This is not that case. In fact, any compulsion that might be involved here is much closer to what happens when a defendant makes a trial decision to offer himself as a witness and go on the stand, and then as a matter of operation of law must subject himself to prosecution. Well, that's the issue as I see it, but maybe I'm wrong. Correct me if I'm wrong, and maybe Mr. Katyal will, that the issue was whether there was unconstitutional compulsion at the time when the statements were obtained. But I thought it was very well settled that if there wasn't compulsion at that time, then the later introduction of the statements into the — into evidence at the trial does not implicate the privilege against self-incrimination. That would certainly be true, Justice Alito. So what happened in State court really is irrelevant to this. This is — everything that — everything important here was done under Rule 12.2 of the Federal Rules of Criminal Procedure, and that's — and that's the issue. If the compulsion test settles the matter, Justice Alito, yes, that is correct. Even if it doesn't settle the matter, we think that it was then subsequently waver at the time the evidence was introduced in the State's trial. But why doesn't it settle the matter as a — as you understand the case that's being presented, as a constitutional matter? Sure, Kansas may have some rules. Maybe the judge will say I'm not going to hear this. That's a State rule. But insofar as the Federal Constitution is concerned, why doesn't that settle? I think it can. There is some dispute between the parties on whether there is a sort of category of compulsion called something else, perhaps, which doesn't rise to the Portish-Mincy constitutional bar standard. For example, the Respondent has argued that although this may not be like Portish or Mincy, there is still nonetheless some inappropriate burden upon the choice that was made, and that that is somehow constitutionally suspect. So I'm merely trying not to concede the ground that even if, and I agree with you, there was not constitutionally barred compulsion here, still there is a way for Kansas to prevail in the case. I'm sort of coming back to Justice Ginsburg's question. The Kansas Supreme Court held that the introduction of the allegedly compelled testimony given to the psychiatrist violated the Federal Constitution, but why didn't the Kansas Supreme Court simply hold that there was no right on the part of the prosecution to obtain that rebuttal evidence or to introduce it, since this was a case of voluntary intoxication? You tell me that Kansas does not allow this just for voluntary intoxication. And that was the defense he was raising, right? Your Honor, I don't know why the Kansas Supreme Court chose to settle this by interpreting the Fifth Amendment in a manner that we believe is incorrect. But nonetheless, that's what they did. That's what they did. So when we send it back, is it still open to them to decide that under Kansas law the Your Honor, I suspect that if this case is remanded, there will be a variety of other issues presented to the Kansas court, and it will have to determine how to resolve them. One issue is whether the expert, the governance expert, went beyond the scope of the direct, the experts for the defendant. That's an open, that would be an open issue, because I think rule, the Federal Rule 12.2 is very clear that the rebuttal testimony cannot exceed the scope of the defense expert's testimony. Justice Ginsburg, it may well be likely that upon remand the scope issue would come before the Kansas court to be resolved under principles of Kansas evidentiary law. In this case, of course, while it's been argued at some length by Respondent, we don't think the scope question is necessarily or properly in front of this Court. It was a threshold determination made by the Kansas court that the Fifth Amendment keeps our rebuttal witness off the stand at all. And we have to get past that in order to get to related questions. And that is, as you say, a question of Kansas law. So it would be odd for us to resolve that anyway. Well, Your Honor, I think that is a question of Fifth Amendment law. The Kansas Supreme Court interpreted the Fifth Amendment as creating a bar upon Dr. Wellner's testimony. I'm saying the question of whether the cross-examination went beyond the scope of the direct and whether that invalidated it, that wouldn't be resolved under the Federal rules of civil procedure, but rather under Kansas law, right? Your Honor, I believe that is correct. As a practical matter, this Court has recognized in the Fifth Amendment context that there are outer constitutional bounds with respect to scope. For example, the relevancy statute you recognized in both Brown and McGautha. But those are not implicated here. And as a practical matter, the sorts of allegations that Respondent is now making, although they weren't objected to at trial with respect to specific aspects, would be matters resolved under the Kansas rules of evidence. Breyer, should we say anything about that? I mean, one of the things he testified to, that is, the government expert testified to the defendant, was one of those unusual people who is actually exposed to a variety of different people in his life. He had people who were criminal types. They were drug users. He found himself identifying and looking up to people, alternatively described as bad boys or outlaws, looking up to them, being impressed and awed by them, and in certain circumstances wanting to outdo them. That doesn't seem to have much to do with the issue that the defendant put in to the one he wanted to put in in the Federal court, which was he wanted to ask about his mental – about his – the words exactly are a defense of insanity, which can be interpreted broadly, namely whether he is insane or not. So we both have the government expert saying, no, he's not insane, and the government expert going on to give an explanation of why he shot the sheriff. So is that – is that, in your opinion, something we should say, that that's a serious question, whether that exceeds it, et cetera? What should we say about it? Justice Breyer, if the Court wishes to speak to scope, I think it could reaffirm that the constitutional standard as it's suggested in both Magatha and Brown is reasonably related or relevant to the direct examination. So your words would be because they have introduced what we'd say is the defense has introduced an argument that even if it's proper for the introduction of the government's expert witnesses under the Fifth Amendment, it still cannot be beyond – go beyond what is – what's your exact word, reasonably? Reasonably related was the phrase. Reasonably related to the defense of insanity that the defendant himself raised. And then that would be an issue for the Kansas court to decide. And on the facts here, Your Honor, we think there are very good facts on both sides. No, you'd bring up arguments why this is okay, and they would bring up arguments why it isn't reasonably related, and Kansas would decide. Can I go back to the line, Jury? I'm sorry? Can I go back to the line, Jury? Yes, ma'am. The question that some of my colleagues have focused on. If we're to say that this was not compelled speech, presumably there would be no reason the government couldn't use this report, whether or not the defendant put his or her mental state at issue. Because if it's not compelled, you could use it as affirmative evidence, correct? If it is not constitutionally impermissible in the nature of the compulsion, yes, Your Honor. Sotomayor, it seems a somewhat, if I may finish. Assuming that I'm troubled by that holding, then what's the line we draw with respect to the question Justice Kennedy asked you as to when it is permissible? You're saying let's just rule on the base. When the defendant puts on an expert, we can rebut with an expert. But the broader question of if he puts his mental state at issue without an expert, could you do it? Could you still put on his examination? I'm not sure you've really answered that question. Yes, Justice. Which is, how broadly do we hold? There's a waiver whenever you put in your mental state at issue, or is it a waiver only when you use an expert and then the government is free to respond with a compelled statement? Yes, Justice Sotomayor. I think if the Court wishes to go beyond the rule that we're requesting in that regard, I would suggest it analyze the factors that were articulated by the Court in the Murphy case in 1964. That would be the case where the Court cataloged the values that are protected by the Fifth Amendment prohibition on self-incrimination, mandatory self-incrimination. Isn't that an academic question in this case? After all, this expert for the government came in when the case was in the Federal system. The Federal system has a rule that when the defense puts on an expert, the government can counter it. So the limit would be, I mean, Kansas doesn't provide for this. The Federal rules provide for it in a very limited way. So to talk about using it beyond the scope of the Federal rule seems to me not the case that's before us. I believe it is not the case before us, Your Honor. I believe we wouldn't want to concede there are other circumstances where it might be constitutionally permissible. Mr. Chief Justice, with permission, I'd like to reserve the balance of my time. Thank you. Mr. Harstie. Mr. Chief Justice, and may it please the Court. When a defendant puts his mental state in issue through the testimony of an expert who's examined him, the State may rebut that testimony with its own expert who examined the defendant. Fifth Amendment does not allow a defendant to put on his side of the story and then deprive the prosecution of any meaningful chance to respond. And we think the close analogy here is the situation where a defendant himself takes the stand. To the extent that the question of the Court has questions about scope of the government's ability to respond, we think that those are answered, like the General said, by the questions about when the defendant takes the stand, reasonably related to the subject matter that the defense put on. Even if the defendant does not submit an expert of his own, but simply puts his mental state in issue? I think that that's a different case. The Court's cases, Estelle, Buchanan, Powell, have addressed an expert for expert situation. And the specific rationale there is that this mental health opinion testimony is different in that you really can't have an expert give an opinion without examining the defendant. If we're talking about the defendant's testimony, you know, he's not qualified to be an expert. He can give factual statements about what happened to him and what was happening at the time of the crime, but he's not giving an expert opinion. So to us, it does seem to be a different question about whether it's really reasonable to have an expert to rebut that testimony. The Court just doesn't need to decide that question in this case. There's also a second question that the General alluded to, which is if he makes factual statements during his mental examination, the defendant, and then also gets up on the stand at trial, testifies and says something contrary, you know, whether you could use those for impeachment purposes, the Court didn't grant him those. Roberts' Why would it only be for impeachment purposes? It's directed at some statements that he said, which are not going to be terribly pertinent to the mental diagnosis, but valuable evidence. And the defendant takes the stand. Can the government call? Here's this person. He happens to be the doctor that took the examination, but he learned some things here that we think are helpful. Well, I think this goes back to the questions that Justice Alito started asking about, which have to do with where there is compulsion here, if at all. This is a unique situation in that there is a court-ordered mental exam, but it only happens as a result of the defendant's choice to give the notice of putting on the defense, and then the evidence for the exam, at least under the rules, never comes in until he puts on his evidence first. It's really a parity principle that the Court recognized in Estelle and in Buchanan. In those cases, we read them to the Court to have said that there is sufficient compulsion in the ordering of the exam to raise Fifth Amendment questions, but when the defendant opens the door, the Fifth Amendment just doesn't give him any right to stop the prosecution from responding. But if the Court wanted to find that there was no compulsion and these statements could be used for any purposes, we think that would be more than the Court said in those prior cases. But this is a different situation in that it is the defendant's choice that affects whether this is ever going to come in. This is not the type of Portash-compelled testimony where you are set before a grand jury and have to either self-incriminate, be in contempt, or commit perjury. Mr. Horne, speak. Alito, isn't the question here whether Rule 12.2 is constitutional? Everything that was done here seems to me to have been done in compliance with Rule 12.2 of the Federal Rules of Criminal Procedure. So if there is, insofar as the taking of the statement is concerned, which I'm suggesting is the issue and not the later introduction in the Kansas court, am I wrong on that? Well, if the question is, is Rule 12.2 constitutional, we think the answer is pretty clearly yes. If you look at the way that that rule has evolved, it's evolved in response to this Court's decisions about the understanding of the Fifth Amendment that there is a like-for-like principle, that when the defendant puts an issue that the State can respond in kind. The Kansas Supreme Court thought that there was a separate issue because of the specific Kansas rules, but as the General suggested, you know, those Kansas rules may be a Kansas – there may be a Kansas problem that has a Kansas law solution, but Federal constitutional law just doesn't depend on the State rules of evidence. I'm wondering whether you way overread the cases that you rely on, because in all of those cases what we were talking about was an examination that had been specifically requested by the defendant. Now, here that's not the case. The defendant has asked for something and has opened the door conceivably, but the examination that we're talking about is one that the State has compelled and that the defendant does not wish to undergo. That's a big difference between this case and all the ones you rely on. That's a factual difference from, for example, Buchanan and Powell, but we think the key principle is the one that comes through in the Court's cases, that if the defendant opens the door, the State can respond. And we think that the Court repeated that principle numerous times in Buchanan. It's then on page 425 of the decision, defense counsel is on notice that if you open the door, the government can rebut. And it's actually interesting. I think every member of the Court understood, although it wasn't clear from the majority opinion, that that could mean a separate examination. And I would point the Court to Justice Marshall's dissent, footnote 5, where he says, of course, you could have your own separate examinations. So it seems to me that the case is that the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested. Saharsky. Right. That was the specific holding based on the facts of that case. But because the Court talks to the State, the State can't rebut it. I mean, I guess the question is, you say it's a factual difference. It might be a factual difference between compulsion and lack of compulsion. Okay. And if the Court wants to say that there is sufficient compulsion here in the ordering of the mental state exam, despite the fact that there was the initial choice by the defendant's choice at trial to put on his testimony, is what makes this evidence available to the government to use in rebuttal. So it's fine that Buchanan does not decide the exact facts of this case. You could say that the holding does not decide this case, but we think it comes pretty darn close, because the Court's rationale is whether the defendant opened the door, said again and again, did the defendant open the door, and if he does, the State  Scalia. Scalia. Well, wait. I mean, all the State — I think it oversimplifies it to say that when the defendant puts at issue that the government can respond. Yes, the government can respond with whatever evidence it has. But the issue here is not whether the government can respond. The issue is whether the government can compel the defendant to undergo a psychiatric examination. That's quite a different issue, really, from whether the government can respond. Of course it can respond. That's right. The rule that we're asking this Court to adopt is, you know, the same one that we think was at least hinted in in the decisions in Estelle v. Smith and in Buchanan, which is when the defense is putting on an expert about his mental state that is testifying to an opinion based on an examination, that the State also can have its own expert that testifies as to mental state based on an examination. That's — we think this is a unique situation. We think that's all the Court needs to do to decide this case. To put it simply, the — More precisely, it's not that the State can have its own expert. It's that the State can compel the defendant to testify to an expert. It can compel the defendant to speak to a psychiatrist. That's really the issue, not whether the government can respond. Of course it can respond. Sure. The implication is that the State has the same access to the defendant as the defense expert had because the State's expert is unable to come up with an opinion without a personal examination of the defendant. This was explained very well in your decision for the plurality of the D.C. Circuit in Byers, which is — Kagan is that a waiver theory? Because Justice Scalia's opinion was not based on a waiver theory. But my understanding of your brief was that you were arguing about waiver. Is that right? That the defendant here has waived the ability to say that he's being compelled. We've called it a waiver by the defendant's conduct for two reasons. One, that's what this Court called it in Powell when it was describing its holding in Buchanan. Two, that's what this Court has called it, and I'd point you to page 15 of the gray brief, in the cases about what happens when a defendant takes the stand, that in the act of taking the stand, he has waived his Fifth Amendment rights. But you don't have to call it a waiver. The point is that the Fifth Amendment does not extend so far as the defendant claims. It doesn't allow him to both put on his side of the story and then claim that the government can't have a chance for any meaningful rebuttal. So, you know, we really don't think that that label matters. We think that the Byers, D.C. Circuit plurality, we think that the Pope decision that was well before this Court's decision in Estelle by then-Judge Blackmun, which said, you know, call it either way, you know, the result is the same, which is that this evidence can come in. Ginsburg-McGillivray And you're suggesting that the government can answer in a like manner as the defendant. If a defendant opens the door by experts, then the government can call experts. And it's not to say that if a defendant simply offers his own testimony, the government can do something that the defense has not opened the door to. That's right. The State has an expert who examined the defense has an expert who examined the defendant. The State can use an expert who examined the defendant. It's a parity principle there. It's a different question about trying to rebut or impeach the defendant's own statements. Sotomayor Well, I'm presuming that if a defendant takes the stand and says something completely contrary to what he tells a government psychiatrist, that you would rely on the Brown line of cases, that you could cross-examine him on the contrary to the statement to the psychiatrist. Ginsburg Again, we think that's the second question presented that the Court didn't grant, but there are good arguments for why the defendant, once he opens the door, should not be able to slam it shut. Also, we think this Court's cases like Ventress that have to do with recent cases on impeachment would go to this. Now, there's a question about whether it's a difference that it's the defendant's own statements as opposed to an expert's opinion based on his statements. So the Court would have to grapple with that. Sotomayor Well, that would be a different issue. I'm just talking about whatever statements he made, but don't. The light is on. Roberts Counsel, your time has expired. Sotomayor Thank you. Roberts Mr. Katyal. Katyal Thank you, Mr. Chief Justice, and may it please the Court. The State is trying to use Scott Cheever's words to execute him. That's wrong for many reasons, but the simplest one is that whatever the scope of the Fifth Amendment waiver may be in this case, the prosecution here exceeded it. Scott Cheever's words were uttered in the context of an uncounseled, unmerandized, five-and-a-half-hour jail exam that the State made him undergo as the price for putting on his voluntary intoxication defense. Ginsburg Mr. Katyal, if this had played out entirely in the Federal court, the examination of the defendant was pursuant to Federal Rule 12.2, your argument seems to be that Rule 12.2 violates the Fifth Amendment. I mean, the mental examination was ordered in the Federal court after the defendant said, I am going to put on a couple of witnesses, expert witnesses, to testify to my mental state. Rule 12.2 says when a defendant does that, then the government has the right to have the defendant examined by its expert. So the broad argument that you're making seems to lead inevitably to the conclusion that Rule 12.2 is unconstitutional. Katyal Your Honor, we think that that's partially right. That is, our argument ultimately does invalidate a small part of the application of 12.2d, and for that reason, we think that the Court should avoid that constitutional question by focusing on the scope question, which is a Federal Fifth Amendment question, Justice Scalia, not one of Kansas law. And if I could walk you through our 12.2 thinking, 12.2d excludes testimony from the defense expert or may, it's permissive. And so to the extent that a trial judge, a Federal judge, excluded evidence that the defendant wanted to put on because he didn't submit to the exam or the like, we do think that that application would be violated. Alito Well, that would be a – that's not a self-incrimination question, though, isn't it? It's a due process question. It's an unreasonable limitation on the defendant's ability to put on a defense. Katyal Your Honor, it's the clash between – it's just like Simmons. It's the clash between two different constitutional rights, the right to put on an effective defense on the one hand or the right that is burdened, the right of self-incrimination on the other. And it's that choice, Your Honor, which we find makes the compulsion necessary – compulsion. Alito No, but there wouldn't be at that point – suppose that the Federal rule simply said you can't have an expert testify about mental condition, period. That's a – that raises a due process issue, and maybe there would be a serious due process question about it. Katyal Quite right. Alito Okay. Up to that point, we're not yet at the Fifth Amendment. Katyal Quite right, Your Honor. But when a State like Kansas offers the voluntary intoxication defense, makes it part of the State's burden to prove as an element of the offense, and then conditions that by saying, well, if you put that evidence on, you then have to pay the price, submit to a five-and-a-half-hour, uncounseled, unmerandized investigation that goes far beyond what the voluntary intoxication defense is. Breyer Your – the State admits that all that they could put on is information from the psychiatrist that is reasonably related to the defense that the defendant raised. Do you disagree with that? Katyal No, we – Your Honor, we agree, and we think this case has to be on the legal standard. Breyer All right, so you both agree, and then we're the only – fine. You both agree that the test is reasonably related, or the equivalent. So we can simply say that, they both agree.  And that's what we think you should say, Your Honor. Breyer And now we send it back to the Kansas court and say, we're not going to go through the record here, because you should do it. Katyal That's precisely right, Justice Breyer. Both sides are agreeing on the legal standard. Breyer Then why are we here? Everybody agrees. Katyal Well, that is ultimately what we think, and it avoids the constitutional question by doing that. And this case has never square – this Court has never squarely held that the legal proposition, that both sides are now in agreement on that. Scalia But Kansas decided the constitutional question, and we can't send it back unless we reverse the Supreme Court of Kansas. So you say we're going to dodge the constitutional question? How can we? It has been decided by the Kansas Supreme Court. Katyal Your Honor, I think you can vacate the decision of the Kansas Supreme Court and remand for them to look at whether or not the constitutional question has been reversed. Scalia On what basis can we vacate? We can't vacate a decision unless there's something wrong with it. What's wrong with it? Katyal Well, that it reached to ultimately decide this constitutional question on 12.2. Scalia Oh, that's error? I mean, I understand it's general policy. You don't reach a constitutional question unless you have to. But I've never heard of the proposition that if a court unnecessarily reaches a constitutional question, it can be reversed, and we can send it back and say don't reach the constitutional question. Katyal Your Honor, I certainly think that's available to you, particularly in the context of this case, in which there's such an interrelationship between the scope issue and the ultimate merits question of the Fifth Amendment. Scalia I don't think so. Kansas decided the constitutional question. We took the case in order to decide that, and I think we have to decide it. Katyal Well, Justice Scalia, if I could just try, if you looked at even Kansas's opening brief at page 9, at page 12, at page 40, at page 42, it's all about the scope question. That's their opening brief. And so we think that they are integrally bound up. And it be that as it may, it might not have been. Ginsburg But the scope question wasn't decided by the Kansas court, and they wouldn't get to it unless they held that, yes, you can have this rebuttal testimony. Then the next question is, if you can have it, how far can it go? But the anterior question, can you have it at all, is the question that the Kansas Supreme Court answered, no, you cannot have it. And we can't send it back to them without – I mean, if you can't have it at all, then it's irrelevant that the scope was too broad. Katyal That's quite right. Our broadest position, and we think the one that also disposes of this case, is the saying, to my colleague on the other side, that what's at issue here is not whether or not the State – whether or not the State can follow where the defense is led, but rather how can they follow. And here, the State is doing something that there is literally – that this Court has never squarely authorized. Ginsburg Mr. Katyal, would you – you said, in answer to my question, that Federal Rule of Criminal Defendant in small part – can you be explicit? The rule, as I understand it, says if the defendant is going to introduce evidence concerning his mental state, then the government has a right to have the government's expert examine the defendant and rebut what the defendant's experts say. That's what the rule says. And then it says you can't go beyond the scope of that issue, of the mental state. Katyal I think that's mostly right. If I could be a little bit – break down the rule a little bit. 12.2d has the provision which says that if you – that the price of not submitting to the exam is the exclusion of the defense experts. So we think that, if it's a permissive rule, but if it's applied, we think that's unconstitutional. There are other parts of 12.2 which don't raise the question. If it's unconstitutional to say to the defendant, you have a choice, if you introduce this testimony, then the government can follow where you have led. If you don't introduce the testimony, then of course the government can do what it wants. I don't quite think that's what 12.2c4 says. Rather, what 12.2c4 says is that the State can introduce expert testimony on an issue regarding mental condition on which the defendant has introduced evidence. Yes. And it's not clear to me whether or not that's talking about a Buchanan situation, one in which the defense has requested the exam or not. It says on which the defendant has introduced evidence. The evidence is the defendant's experts. Exactly. And so to the extent, Your Honor, that it's used to introduce, as it was in this case, evidence that the defendant's own words against him, yes, we think that 12.2 raises a deep constitutional question, something that these courts have heard. Of course, there's nothing unusual about saying if the defendant introduces certain evidence, he has to forfeit some of his Fifth Amendment self-incrimination rights. Absolutely. It happens every time the defendant chooses to testify. Absolutely. He need not testify, but if he introduces that evidence, he must submit to cross-examination and has to incriminate himself. And this is seems to me quite similar. He need not introduce the evidence of a psychiatrist, but if he does, he has to forfeit his Fifth Amendment right not to talk to a psychiatrist. Well, we agree with the first 75 percent of that. That is that certainly it's the case that when a defendant takes a stand, they're subject to cross-examination. Cheever took the stand. He's subject to cross-examination. Cheever's expert takes the stand. Evans, he's subject to cross-examination. But the question here is whether or not the State can go further and force someone to submit to a mental health evaluation and use that against them. Scalia. I understand that, but it's still the same correlative system playing. If the defendant does one thing, he has to accept what goes along with it. And that includes waiving or forfeiting his right not to incriminate. I don't think so. I don't think that's how it plays out. So, for example, if this were an accounting case, a criminal accounting case, and the defendant had talked to the CEO of the company, talked to an accounting expert, walked them through all the books and so on, and said here's what happened and so on, and the expert took the stand, I don't think the State could then force  the defendant. Scalia. But that's not getting into the defendant's mind. Oh, but I think that cuts the other way. It is only the psychiatrist who can get into the defendant's mind when he is raising a mental capacity defense. And, Justice Scalia, that precisely cuts the other way. This Court in Couch v. United States said that's the heart of what the Fifth Amendment is about, the intrusion into a defendant's mind. And here, this case is a perfect illustration of that. Roberts. It's just the fact that the evidence here is based on the defendant's statements. If you had a physical object, you wouldn't say it's the murder weapon. You wouldn't say that if the defendant submits a study about the murder weapon, the ballistics, this and that, you wouldn't say, well, all the government can do is cross-examine the defendant's expert. You say, no, they get to do their own study. The reality that makes this different is that here, when you're submitting and preparing psychiatric evidence, it's based on the ballistics testing is statements from the defendant. And it seems to me unfair to say the defendant's expert has access to that ballistics evidence, but the State does not. Mr. Chief Justice, I think what does the work in your ballistics example is precisely that it isn't the defendant's own words. It's something else. And so it's wholly outside of the Fifth Amendment. What we are talking about here in this circumstance is Scott Cheever's own words to the two defendants.  No, I understand that, but it just so happens that the way you do the testing on the evidence when you're talking about psychiatric evidence is to ask questions of the defendant. That's how you do it. That's the parallel to whatever ballistics test they do on the fire department. Katyal Yes, but I think the Fifth Amendment imposes a different value judgment of our Founders based on this type of situation in which you are peering into the defendant's mind. I think that's what the language in Couch v. United States is all about, that there is a difference between the two. Kennedy The defense expert here peered into his mind. It's set out in the appendix. It's confusing because there's a Dr. Evans and there's also an attorney Evans. But the expert is Dr. Evans. He peers into the defendant's mind. Now, is this case any different and any better for you because it happened in State court? Suppose everything here happened in the Federal court. Would you have a constitutional objection? Katyal We would have a constitutional objection. Kennedy And that constitutional objection would be? Katyal Exactly what I was saying to Justice Ginsburg, that this choice, a Simmons-like choice was forced upon the defendant. He could either put on his defense. Kennedy So in your view, in your view, the defendant can be interviewed by his own psychiatrist, but not by a prosecution psychiatrist? Katyal That is correct, Your Honor, but of course the State can cross-examine our psychiatrist in every word. Ginsburg If that's your position, then you must disagree with the D.C. Circuit decision that was already mentioned, United States against Byers, which took the position that where the defendant leads, the government may follow, for the very reason that if the defense expert has access to the defendant, you can't disarm the government by saying, we're not going to let you have a counter-expert, what you can do is cross-examine the defendant's expert. Katyal We do ultimately disagree, Your Honor, with the bottom-line holding in the Byers case that yourself and Justice Scalia was on. We think that that reasoning, the way that the Court got there, was to say that there was a policy-based reason under the Fifth Amendment that allowed this. It wasn't waiver, what you've been hearing about. It was a policy-based reason. And frankly, I think that ultimately this is a the government's argument, both governments, is an argument in search of a theory. We've heard a bunch of different ones. We've heard the Byers one about policy. We've heard Justice Scalia's. Ginsburg I didn't know that it was policy. I thought it was saying it is just like the defendant gets on the stand, he's subject to cross-examination. The defendant puts on experts, the government must be treated equally, must be able to put on its own experts, and as far as waiver, that's a fiction, isn't it? The defendant could say a hundred times, I'm going to testify, but I'm not waiving my Fifth Amendment privilege. It wouldn't matter if he said that a hundred times. He will be exposed to cross-examination. Justice Ginsburg, we think that Byers, ultimately the language, the way it got there was purely policy, and we think that this Court has in the 30 years since Byers really changed the game on the use of policy-based reasoning when it comes to the Fifth Amendment. Kagan But if that's policy, why isn't the cross-examination analogy policy as well? I mean, they are both based on some notion of what is parity and what's reciprocity and what's, you know, what's appropriate to ask the defendant to bear once the defendant decides to become a witness in a proceeding. So they're both the same kind of policy, you want to call it that, but it's one is no more policy than the other. Katyal I don't quite think that's right. The text of the Fifth Amendment is that a defendant can't be, quote, compelled to be a witness, and once a defendant takes the stand and acts as a witness, then it seems to me that is behavior inconsistent, as Burgoys v. Thompson suggests, with the invocation of the Fifth Amendment privilege. Kennedy Can you give me the black letter formulation that you are asking this Court to adopt? It violates the Fifth Amendment when, and then? Katyal When a defendant is forced to undergo a psychological examination as the price for putting on his mental state defense, at least when it's an element of defense. We don't think you have to get into, as our brief explains, affirmative defenses like the Federal defense of the State of the United States. Scalia When you say as the price for putting on his defense, you mean as the price for introducing the testimony of a psychological defense. Katyal That is correct, Justice Scalia. Scalia Authority for that is what? Katyal It's several cases, but I think Simmons is the best case. Justice Harlan's opinion for seven justices of the Court of Appeals. Breyer I mean, you know, the obvious thing is not a question of policy. They're saying, wait, one thing the Fifth Amendment prevents you from being a witness against yourself on. You didn't take the stand. So what you did was introduce three psychiatrists, and they said this man was totally insane. He confirmed no will whatsoever, totally insane. The government says, we have seven psychiatrists who would like to examine this man, and they'll come to the opposite conclusion. The judge says, okay, examine him under compulsion. And they say, he is totally sane, and they each have reasons. Now, you're saying in that case, the government cannot put any of those seven on the stand. Katyal Oh, disagree entirely. Breyer Really? Katyal The government can put experts on, psychiatric experts, but they can't put on. Breyer No, but they base their testimony on an examination compelled by the one of the defendants. Katyal That's the problem. Absolutely. And that is wholly incorrect. Breyer But that puts the government in an impossible position. The defense has allowed witnesses who have examined the defendant, and you mean you're only limiting it to the case where the defense witnesses don't examine the defendant? Katyal I'm saying that if that the defeat in a circumstance that either way, if it's the price we're putting on the defense, then yes, it's optional. Breyer I'm giving you the hypothetical. Psychiatrist A, hired by the defense, examines the witness. He says he is totally mad. All right? That's his conclusion, based on the examination. Psychiatrist B, who works for the government, has examined the witness under compulsion. All right? And he's done it under the authority of 12.2, because the defendant, just as here, made a 12.2 motion and said that this was a, all right, just like here. He examines him. He comes to the conclusion this man is as sane as whatever the most sane thing is. All right? That's his conclusion. You're saying the government can put on its witnesses, but the Fifth Amendment prohibits the – sorry, the defense can put on its witness, but the Fifth Amendment prohibits the defendant from putting on its own witness. Now, that to me is something I can't imagine how the Fifth Amendment could say. Go ahead. Katyal That is not our argument. The prosecution can still put on an expert witness. Breyer No, no. They put on my witness, my imaginary psychiatrist A. And that's what the Fifth Amendment is about. It's about the evidence that can be put on under our system and indeed under Kansas' own system, Justice Breyer. Breyer Well, it may be. But does the Federal Constitution say – is my example. It's my example, Justice Breyer. Katyal I think it does. This Court has never once accepted the idea that a – that the government can force someone to talk to your psychiatrist B and introduce his own words against him. That's what the Fifth Amendment is about. And I understand, sure, the government isn't going to have the evidence that it wants. It's going to be the price of the Fifth Amendment. That's what it's about. Alito Suppose we agree with you and the response is the adoption of a new Federal rule of evidence or a State rule of evidence that says that evidence of a – that an expert who testifies for the defense as to the mental – the insanity or mental state of a defendant is very unreliable if there is – has not been an opportunity for the defendant to be examined by another expert and therefore is just inadmissible, can't do it at all. Would there be a constitutional problem with that? Katyal If it's simply a rule of evidence that doesn't condition one right against the other? No, I don't think so. It would go back to your earlier question. Breyer What do you do with this? The defense says my defense will consist of the fact, demonstrated by an expert, that my heart is too weak to have made it up the stairs. All right? And I have Mr. Dr. Smith, who has examined my heart, and I – he will testify it's impossible I could have been on the third floor, I would have been dead. So the government says we would like to have you examined by our doctor, Dr. B, who we believe will test it, and the judge orders it. All right? So now, Dr. B says his heart is an ox, sound as an ox, and he goes to it. You're saying the government could not put that Dr. B on the stairs. Katyal I think that's quite – that's right, Justice Breyer. The idea that the government can force someone to undergo a mental – or excuse me, a physical evaluation and maybe extract stuff from their body is the price for putting on a defense. Yeah, I think that that raises some Fifth Amendment concerns. Sotomayor Mr. Katyal, assuming that the incredulity of my colleagues continues with your argument, which way would you rather lose? On a waiver theory or on a lack of compulsion theory? And pick one and tell us the reason why that's preferable to the other. Katyal Well, certainly I think lack of compulsion is not something that really is being advanced by the government in this case, even their opening lines at the oral argument are focusing on waiver, not that. And I think it would raise any number of concerns like the ones you suggested to go on a compulsion theory, that it would allow introduction of evidence, even if the defendants hasn't led in that direction. But I would like to try and take another shot at persuading your colleagues about the difference. Kagan Mr. Katyal, can I go back to the cross-examination analogy? Because you say your case is different, but I guess you'll have to explain that one to me. It seems to me that the cross-examination cases say you can't become a witness halfway. Once you've decided to become a witness, you have to subject yourself to all the things that every other witness is subjected to. And it seems to me that, well, you haven't convinced me that the same point isn't true here, that the person, Mr. Cheever, has decided to become a witness essentially by giving an interview to his own expert and allowing his own expert to speak about what Mr. Cheever has told him. And so, you know, he can't do it halfway. Now the government has to get its shot. Same way. Katyal I don't quite think that the cross-examination cases go so far as to say that it leads to the same way. It gets you so far as to say that if someone testifies by be — if an expert testifies using the defendant's own words, that that opens the door to the prosecution doing so. There's something unique about the Fifth Amendment and the idea that the government can peer into someone's mind and extract information out of them in an uncounseled, un-Mirandized, five-and-a-half-hour session and have that used against him at trial. And the price that Cheever paid here was an extraordinary one. He put on a defense that has been a defense for hundreds of years, the idea of voluntary intoxication. And he was told the cost of doing that was that this exam took place and all of this Well, that's something of an overstatement, because he also had the psychiatrist who testified that in his expert opinion, he did not have the requisite mental state. And he prefaced that by indicating how many people he'd examined that had used meth and there was neurotoxicity, and he — so this defense expert did testify to that. Oh, he certainly testified to — So I think you quite overstate when you say it's all — it's just the fact that the defendant testified. Well, the defense expert testified to voluntary incapacitation under methamphetamine, and certainly the prosecution expert did that as well. But then the prosecution expert went a lot further to talk about his anti — to suggest an antisocial personality disorder, to suggest outlaws, and the outlaws' evidence was introduced by the State first in the context of — Soap issues, that's not right. But I do think it does bear on, when you think about whether the Simmons analogy makes sense, whether or not forcing a defendant, as the price of a defense, to open the door to all of this evidence being introduced against him, that is not really a choice at all. That is ultimately a choice. But, Mr. Tattnall, you have conceded, I think, in response to Justice Alito's question, that the rules could be changed to say, defendant, you cannot put on these experts. So how does that really help defendants who want to put on a defense of mental state? You can't put it on unless the government can put it on. And that's the current rule, but you're saying this — the response to it can be this evidence is shut out entirely, the government will have nothing to answer if the defendant doesn't put on experts. I'm not so sure that that would be a rule that defense counsel would favor. I'm not sure that they would favor it or not. Our argument is simply that when a State such as Kansas recognizes a voluntary intoxication defense and doesn't have all these witness rules, that Cheever is entitled to put on that effective defense and not have that right flash against his Fifth Amendment right. And, indeed, the fact that the State has all sorts of options available to it, like expert — like expert evidentiary rules, or even abolishing the voluntary intoxication defense altogether, is the true answer to the policy concerns, not trying to jigger into the Fifth Amendment somehow some exception that allows for psychiatric exams by criminal defendants. Scalia. I'll bet you the prosecution would accept your alternative in a heartbeat. No defendant can introduce any psychiatric evidence. That's a good deal for the prosecution. Maybe it may not be. That's something the legislature would hammer out, but I think that's where the policy objection is properly. What would you hammer out? You said that the rule now is no good because it allows government psychiatrists to have access to the defendant, compelled access. That rule is no good, but the alternative of not allowing this evidence at all, what is there to hammer out? We think that if the Court follows our rule, which suggests that you can't put the defendant to this choice, the State has the option of modifying the voluntary intoxication defense, possibly making it an affirmative defense, or putting restrictions on experts, any number of things that may be possible in that circumstance through the legislative process, not through some Fifth Amendment interpretation of this Court to try and deal with the policy concerns. Ginsburg. Is there really a huge difference between mental state as an element of the offense and mental state as an affirmative defense? I mean, in reality, doesn't the mental state argument of the defendant function as an affirmative defense to premeditated murder? Government has the burden of proof on mental state, but it operates, as far as the case is concerned, as a defense to premeditated murder, this voluntary intoxication. That would be a defense to premeditated murder. Katyala, a brief at page 36 points out that under Kansas law, it's an element of the offense, they bear the burden of proof, and the Sixth Circuit decision in United States v. Davis, I think, explains that in a circumstance like this, like premeditation argument, which is their burden to prove. And if you accept their argument here, you're essentially saying that the defendant's own words can be used by the State to shoulder the load against him, and that is something foreign to the Fifth Amendment. It may be something you want to do for policy reasons, I understand that, but it is not something this Court has ever accepted. If there are no other questions. Roberts. Thank you, Mr. Katyal. General Schmidt, you have four minutes remaining. Thank you, Mr. Chief Justice. I would just like to refocus on what has happened in this case. The Kansas Supreme Court interpreted, or we believe misinterpreted, the Fifth Amendment to say that once the defendant had put his own expert on the stand to testify in support of his mental health claim, after that expert had examined the defendant, the government couldn't respond in common. And it's that bar on our participating in the fact-finding in front of the jury that we are seeking to have overturned here. Breyer. I think what he's saying is that, look, in Simmons, there's a Fourth Amendment problem, and the defendant wants to testify in a Fourth Amendment hearing. And if he does, the State will take that statement and use it at the trial. So because of the reasons, I'd say the policies underlying the Fourth Amendment, the Court says that's wrong. He can go testify at the suppression hearing, and then they can't use his statement later. So by analogy, he says it's really a similar situation. He says that it's the policy behind the Fifth Amendment that says that if you're going to go see the government under compulsion, the psychiatrist, you shouldn't be able to introduce that later. I mean, I think that's my looking at them, because I'm trying to see if I got the argument basically right, which is what I wanted to find out. And now what's the response to that particular argument? I think, Your Honor, the Simmons circumstance is not applicable here. And, in fact, the Court would have to substantially expand Simmons in order to find it to fit these facts. Breyer, you'd have to say then there's a difference between the Fifth Amendment and the Fourth Amendment, and that difference would be what? Well, Your Honor, in the Simmons case, what the government sought to do was to take the defendant's unvarnished statements from the prior hearing and to introduce them without the defendant having put those issues into the fact-finding portion of the trial as affirmative evidence in the government's case in chief. In that regard, it is much more like Smith on its facts, where the Court said even in the circumstances we're confronted with here on those facts, can't do it. The Court specifically said later in the Salvucci case that it hadn't addressed the question in Simmons as to whether or not the government could use that evidence from the suppression hearing for impeachment purposes, which is much more analogous here. So it's an open question even under Simmons, even if it applied, and the Court would have to extend it in that regard. The Court, I would suggest, shouldn't extend Simmons in that regard, because at the end of the day, there's a different factor here, and it goes to the line of questioning that started earlier, is that there is something different, as the Court has repeatedly emphasized, in the nature, the actual nature of use and obtaining of mental health evidence. That's aid at fires. What happens if the defendant is going through this examination, they ask him this, he tells them this, that, and all of a sudden they ask him a question and he said, I'd rather not answer that? I mean, is he allowed to do that? Yes, Your Honor. Why? Because it might incriminate me. In fact, on the record here, the government's expert, Dr. Wellner, specifically advised the Respondent before the examination began that if at any point he wanted to terminate the examination, he was free to do so. So I think, yes. That's a little bit different. I understand terminate, then they'd say, well, look, you don't get to put your expert in. But what if it's just, you know, particular questions? What happens then? Well, on particular questions, I suppose the Respondent could invoke at that time. But more importantly, before any of that could be introduced at trial, there would be a report generated by the expert and all counsel, including the Respondent's counsel, would have the ability to review it and seek some sort of pretrial order to keep out any particularly offensive materials. There are mechanisms to resolve any problems like that that might arise. Sotomayor, I'm not quite sure I understand why we shouldn't follow the Simmons analogy. As I understand it, we haven't ruled on the last question of whether you can use the Fifth Amendment's compelled statements as impeachment. But if we assume that to be the case, most circuits who have addressed the issue and I think it may be all of them, have said you can because there's a waiver of your Fourth Amendment right when you take the stand to impeachment. Why couldn't we follow a similar reasoning here, which is you're compelled to assume – I'm sorry, forget it. I can answer it. If you don't forget it, why don't you try a quick response? Thank you, Mr. Chief Justice. Justice Sotomayor, I think the key difference in Simmons and the reason its reasoning shouldn't be applied here is that the distinction we've been drawing from the start of this case is that what we want is a rule of parity. We want to be able to rebut what the defendant himself put in issue in front of the jury, and that's not Simmons. Thank you, counsel. The case is submitted.